## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FOOTHILL HOSPITAL - MORRIS L.     )
  JOHNSTON MEMORIAL, a California   )
  nonprofit corporation, dba Foothill   )
  Presbyterian Hospital,            )
                            )
       Plaintiff,           )
                            )
     v.                  )      Case No. 01:07-CV-00701 (ESH)
                            )
MICHAEL O. LEAVITT, Secretary of   )      **ECF**
  Health and Human Services,      )
                            )
       Defendant.         )
_____)

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Federal Rule of Civil Procedure 56(b), Defendant, Michael O. Leavitt,

Secretary of Health and Human Services, by and through his undersigned counsel, respectfully

moves this Court for summary judgment on the grounds that there are no material facts in

dispute and that Defendant is entitled to judgment as a matter of law.  In support of the instant

motion, the Court is respectfully referred to the accompanying Statement of Material Facts as to

Which There is No Genuine Issue, and Memorandum of Points and Authorities in Support of

Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for

Summary Judgment.  A proposed order is also attached.


                       Respectfully submitted,

                       <u> /s/                       </u>
                       JEFFREY A. TAYLOR
                       United States Attorney
                       D.C. Bar No. 498610

/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
N.Y. Reg. No. 4202982
United States Attorney's Office
Civil Division
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372


/s/_____
LINDA KEYSER
Attorney
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room 5327D, Cohen Building
330 Independence Avenue, S.W.
Washington, D.C. 20201
202-205-8779
Facsimile: (202) 401-1405

Counsel for Defendant

OF COUNSEL:

JAMES C. STANSEL
Acting General Counsel

JANICE HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
    Counsel for Litigation

United States Department of
    Health and Human Services

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FOOTHILL HOSPITAL - MORRIS L. | ) | |
| JOHNSTON MEMORIAL, a California | ) | |
| nonprofit corporation, dba Foothill | ) | |
| Presbyterian Hospital, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 01:07-CV-00701 (ESH) |
| | ) | |
| MICHAEL O. LEAVITT, Secretary of | ) | **ECF** |
| Health and Human Services, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Defendant, Michael O. Leavitt, the Secretary of Health and Human Services, submits the

following statement of material facts as to which there is no genuine issue in accordance with

Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h).

1.      Plaintiff is a Medicare participating hospital located in Glendora, Los Angeles County,

California.  Compl. ¶ 4.

2.      Plaintiff provided services to Medicare beneficiaries during fiscal year 1995.   In some

instances, Plaintiff was not reimbursed by the beneficiaries for copayments and coinsurance, and

it incurred debt as a result.  See Administrative Record  ("A.R.") 33-34.

3.      Plaintiff applied in-house collection efforts to these debts and, after completion of these

efforts, wrote off the bad debt and, at the same time, referred the debt to a collection agency.

Plaintiff thus wrote off the bad debt before the agency had an opportunity to act on the account.

This policy was applied equally to Medicare and non-Medicare debts.  A.R. 34.

4.      On its fiscal year ending September 30, 1995, cost report, Plaintiff claimed bad debts for

Medicare beneficiaries.  A.R. 20.

5.       The fiscal intermediary, United Government Services, disallowed the bad debts in a

Notice of Program Reimbursement dated December 16, 1996.  Id.

6.       By letter dated June 10, 1997, Plaintiff requested a hearing before the Provider Review

Reimbursement Board ("PRRB").  A.R. 413.

7.       Plaintiff disputed certain adjustments made by the Fiscal Intermediary in the December

16, 1996, Notice of Program Reimbursement, specifically contesting the Intermediary's decision

denying Plaintiff reimbursement for its Medicare bad debt for fiscal year ending June 30, 1995.

Id.; Plaintiff's Brief at 1.

8.       The PRRB held a hearing on the matter on January 22, 2004.  See A.R. 366.

9.       By decision dated December 19, 2006, the PRRB concluded that the Intermediary's

adjustments to Plaintiff's bad debts were improper.   A.R. 18-26.  Citing its decision in Dameron

Hospital v. Blue Cross Blue Shield, PRRB Dec. No. 2006-D-16 (Feb. 17, 2006), the Board

concluded that the collection efforts documented by Plaintiff met the Secretary's regulatory

requirements.  A.R. 24.

10.      After receiving input from the Centers for Medicare Management within the

Centers for Medicare & Medicaid Services, the Administrator elected to review the December

19, 2006, PRRB decision.  A.R. 10-11.

11.      On February 16, 2007, the Administrator issued a decision reversing the Board's

determination.  A.R. 2-9.  The Administrator concluded that Plaintiff had failed to establish that

the bad debts were "actually uncollectible" when claimed as worthless or that there was no

likelihood of recovery according to "sound business judgment."  A.R. 6; see 42 C.F.R. §

413.89(d)(3), (4) (then § 413.80(e)(3), (4)).  The Administrator noted that there was no evidence

of record as to Plaintiff's bad debt policy for the applicable period (up to and including August 1,

1987), and thus Plaintiff had failed to demonstrate that the moratorium applies in this case.

A.R. 8.

12.    On April 17, 2007, Plaintiff filed the complaint in the instant action requesting relief in

the form of claims reimbursement, costs, interests, and such other relief as the Court deems

appropriate.  Compl. at 8.

Respectfully submitted,


/s/
JEFFREY A. TAYLOR
United States Attorney
D. C. Bar No. 498610


/s/
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
N.Y. Reg. No. 4202982
United States Attorney's Office
Civil Division
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

/s/ _____
LINDA KEYSER
Attorney
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room 5327D, Cohen Building
330 Independence Avenue, S.W.
Washington, D.C. 20201
202-205-8779
Facsimile: (202) 401-1405

Counsel for Defendant

OF COUNSEL:

JAMES C. STANSEL
Acting General Counsel

JANICE HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
     Counsel for Litigation

United States Department of
     Health and Human Services

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FOOTHILL HOSPITAL - MORRIS L. JOHNSTON MEMORIAL, a California nonprofit corporation, dba Foothill Presbyterian Hospital, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 01:07-CV-00701 (ESH) |
| MICHAEL O. LEAVITT, Secretary of Health and Human Services, | ) ) ) | **ECF** |
| Defendant. | ) ) ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Michael O. Leavitt, Secretary of Health and Human Services (the "Secretary"), respectfully submits this Memorandum of Points and Authorities in support of his motion for summary judgment and in opposition to Plaintiff's Motion for Summary Judgment. This case involves Foothill Hospital's ("Foothill") challenge to the Secretary's decision denying Medicare reimbursement to Foothill for the costs of certain bad debts Foothill incurred as a result of treating Medicare beneficiaries.  After its own internal efforts to collect these debts had failed, Foothill referred them to an outside collection agency for further activities.  At the same time as this referral, however, Foothill claimed the bad debts were uncollectible and sought Medicare reimbursement for them.  Consistent with both his bad debt regulations and common sense, the Secretary found that Foothill had not demonstrated that the debts at issue were uncollectible and entitled to reimbursement by Medicare.

In its Motion for Summary Judgment ("Pl.'s Br."), Foothill asks this Court to order the Secretary to reimburse it for expenses that are not yet uncollectible, in contravention of standards promulgated by the Secretary to reasonably determine non-collectibility. That attempt must fail under the highly deferential standard of review applicable in this case. Foothill further urges that Congress barred the Secretary from making any changes to his payment policies after August 1, 1987. That argument is refuted by the case law interpreting the statutory moratorium in question. For these reasons, the Secretary's final decision here should be upheld.

## STATUTORY AND REGULATORY BACKGROUND

### I. The Medicare Program Generally

The Medicare program provides health insurance benefits to eligible aged and disabled persons. See Title XVIII of the Social Security Act. The program consists of four main parts. Part A provides coverage for the costs of hospital and related post-hospital services, including home health care. See 42 U.S.C. §§ 1395c - 1395i-5. Part B is an optional supplemental program which provides coverage for other types of medical services, including physician services. See 42 U.S.C. §§ 1395j - 1395u-4. Parts C and D authorize the provision of Medicare services through managed care organizations. See 42 U.S.C. §§ 1395u-21 - 1395w-152. This case concerns payments to hospitals under Medicare Part A.

CMS, a component within the United States Department of Health and Human Services ("HHS"), is responsible for determining the reimbursement amount due a hospital. 42 U.S.C. § 1395g. During the period at issue here, CMS contracted with private insurance companies to act as "fiscal intermediaries" ("FI") and assist in the day-to-day operations of the Medicare program.

<u>See</u> 42 U.S.C. § 1395h (2004).[1/]  The FI, acting under contract with the Secretary, determines the payment to be made to a hospital (or "provider") based on audits of annual cost reports submitted by the provider.   42 C.F.R. § 413.20.  To receive payment from Medicare for services rendered, a hospital is required to file a Medicare cost report with its FI at the end of a cost reporting year.  42 C.F.R. § 413.20.  The FI is responsible for reviewing the cost report and issuing a Notice of Program Reimbursement ("NPR") which sets forth the amount of allowable Medicare payments.  42 C.F.R. § 405.1803.

## II.    The Administrative Appeals Process

The Medicare statute establishes the review mechanisms available to Medicare providers of services, including hospitals, under Medicare Part A.  <u>See</u> 42 U.S.C. § 1395oo.  A provider dissatisfied with a Medicare reimbursement decision of its FI may appeal to the Provider Review Reimbursement Board ("PRRB"), an administrative tribunal within HHS established to hear Medicare reimbursement disputes.  42 U.S.C. § 1395oo(a).  The parties to such an appeal are the provider and the intermediary.  42 C.F.R. § 405.1843(a).  If jurisdictional prerequisites are satisfied and the Board has the authority to decide the matter at issue, the Board may hold a hearing and issue a decision.  <u>Id.</u>

A decision of the PRRB is final unless the Secretary, on his own motion, reverses, affirms or modifies the Board's decision.  <u>See</u> 42 U.S.C. § 1395oo(f).  The Secretary has delegated his authority to review PRRB decisions to the Administrator of CMS.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875(a)(1).  A provider dissatisfied with a decision of the PRRB

---

[1/]    These entities are now known as "Medicare administrative contractors."  <u>See</u> 42 U.S.C. § 1395h.

or the Secretary (if the Secretary reviews the Board's decision) may seek judicial review of that decision by filing a civil action within 60 days of the date that notice of the final decision is received.  42 U.S.C.

§ 1395oo(f)(1); 42 C.F.R. § 405.1877(b).

## III.    Medicare "Bad Debts"

Prior to 1983, the Medicare statute based hospital reimbursement on a retrospective determination of "reasonable cost" as defined in the Secretary's regulations and identified in a provider's annual cost report.  42 U.S.C. § 1395x(v); 42 C.F.R. § 413.1 et seq.   Beginning in 1983, Congress established a Prospective Payment System under which hospital operating costs are reimbursed on a per discharge basis through prospectively-fixed rates that are based on the "diagnostic related group" assigned to the discharge.  42 U.S.C. § 1395ww(d); 42 C.F.R. § 412.1 et seq.   However, certain other Medicare payments to hospitals continued to be retrospectively determined and reimbursed on a reasonable cost basis.  Such other payments include the unpaid deductible and coinsurance obligations of Medicare beneficiaries (Medicare "bad debts") involved here.  42 C.F.R. § 412.115(a).

The Secretary's regulations define "bad debts" as:

[A]mounts considered to be uncollectible from accounts and notes receivable that were created or acquired in providing services. "Accounts receivable" and "notes receivable" are designations for claims arising from the furnishing of services, and are collectible in money in the relatively near future.

42 C.F.R. § 413.89(b)(1); Provider Reimbursement Manual ("PRM") § 302.1 (Pl.'s Br., Ex. 1 at 3-3).

Under the reasonable cost rules, unpaid patient obligations in general are treated as reductions in revenue rather than reimbursable "costs" of furnishing care.  42 C.F.R. § 413.89(a),

(c).  However, because the Medicare statute provides that the Secretary's regulations may not result in the costs of Medicare-covered services being shifted to non-Medicare patients (or their payors), see 42 U.S.C. § 1395x(v)(1)(A)(i), the regulations provide for reimbursement of Medicare bad debts so that the costs of Medicare services covered by such amounts are not borne by other patients.[2]  42 C.F.R. § 413.89(d).  To prevent windfalls for hospitals that might otherwise have strong incentives to simply "write off" unpaid Medicare obligations as bad debts rather than pursue collection of the amounts, the Secretary's regulations establish several criteria that an unpaid Medicare obligation must meet to be allowed as a "bad debt."  The criteria are:

> (1) The debt must be related to covered services and derived from deductible and coinsurance amounts.
> (2) The provider must be able to establish that reasonable collection efforts were made.
> (3) The debt was actually uncollectible when claimed as worthless.
> (4) Sound business judgment established that there was no likelihood of recovery at any time in the future.

42 C.F.R. § 413.89(e) (emphasis added); PRM § 308 (Pl.'s Br., Ex. 1 at 3-5).

The Secretary's Provider Reimbursement Manual, issued together with similar guidelines and letters under his interpretive rulemaking authority to explain and clarify the application of the reimbursement regulations, see Shalala v. Guernsey Memorial Hosp., 514 U.S. 87, 99 (1995), further states with respect to bad debts:

---

[2]    Prior to the Balanced Budget Act of 1997, Medicare paid 100 percent of the bad debts of Medicare beneficiaries attributable to coinsurance and deductible amounts for Medicare-covered services.  The Balanced Budget Act of 1997 reduced the level of Medicare bad debt payments. For cost reporting periods beginning during fiscal year 1998 (such as the cost reporting year at issue in this case), Medicare reduced its bad debt payments by 25 percent.  42 C.F.R. § 413.89(h).

310. REASONABLE COLLECTION EFFORTS

To be considered a reasonable collection effort, a provider's effort to collect Medicare deductible and coinsurance amounts must be similar to the effort the provider puts forth to collect comparable amounts from non-Medicare patients. It must involve the issuance of a bill on or shortly after discharge or death of the beneficiary . . . . It also includes other actions such as subsequent billings, collection letters and telephone calls or personal contacts with this party which constitute a genuine, rather than a token, collection effort . . . .

A. <u>Collection Agencies</u>.– A provider's collection effort may include the use of a collection agency in addition to or in lieu of subsequent billings, follow-up letters, telephone and personal contacts. Where a collection agency is used, Medicare expects the provider to refer all uncollected patient charges of like amount to the agency without regard to the class of patient. The "like amount" requirement may include uncollected charges above a specified minimum amount. Therefore, if a provider refers to a collection agency its uncollected non-Medicare patient charges which in amount are comparable to the individual Medicare deductible and coinsurance amounts due the provider from its Medicare patients, Medicare requires the provider to also refer its uncollected Medicare deductible and coinsurance amounts to the collection agency.

B. <u>Documentation Required</u> – The provider's collection effort should be documented in the patient's file by copies of the bill(s), follow-up letters, reports of telephone and personal contact, etc.

PRM § 310.A & B (Pl.'s Br., Ex. 1 at 3-5 - 3-6).

310.2 <u>Presumption of Noncollectibility</u> – If after reasonable and customary attempts to collect a bill, the debt remains unpaid more than 120 days from the date the first bill is mailed to the beneficiary, the debt may be deemed uncollectible.

PRM § 310.2 (Pl.'s Br., Ex. 1 at 3-6).

314. ACCOUNTING PERIOD FOR BAD DEBTS

Uncollectible deductibles and coinsurance amounts are recognized as allowable bad debts in the reporting period in which the debts are determined to be worthless. Allowable bad debts must be related to specific amounts which have been determined to be uncollectible. Since bad debts are uncollectible accounts receivable and notes receivable, the provider should have the usual accounts receivable records - ledger cards and source documents to support its claim for a bad debt for each account included. Examples of the types of information to be retained may include, but are not limited to, the beneficiary's name and health insurance number; admission/discharge dates for Part A bills and dates

6

of services for Part B bills; date of bills; date of write-off; and a breakdown of the uncollectible amount by deductible and coinsurance amounts.  This proposed list is illustrative and not obligatory.

PRM § 314 (Pl.'s Br., Ex. 1 at 3-7).

316.  RECOVERY OF BAD DEBTS

Amounts included in allowable bad debts in a prior period might be recovered in a later reporting period.  Treatment of such recoveries under the program is designed to achieve the same effect upon reimbursement as in the case where the amount was uncollectible.

Where the provider was reimbursed by the program for bad debts for the reporting period in which the amount recovered was included in allowable bad debts, reimbursable costs in the period of recovery are reduced by the amounts recovered.  However, such reductions in reimbursable costs should not exceed the bad debts reimbursed for the applicable prior period.

PRM § 316 (Pl.'s Br., Ex. 1 at 3-7).

The Secretary has issued regulations regarding the financial documentation that providers must maintain.  42 C.F.R. §§ 413.20, 413.24.  The regulations require providers to "maintain sufficient financial records and statistical data for proper determination of costs payable under the program."  42 C.F.R. § 413.20(a).

The Secretary's Medicare Intermediary Manual ("MIM") also explains and clarifies the application of the reimbursement regulations.   The MIM contains the following clear instruction regarding when the provider can write off the bad debt:

If the bad debt is written-off on the provider's books 121 days after the date of the bill and then turned over to a collection agency, the amount cannot be claimed as a Medicare bad debt on the date of the write-off.  It can be claimed as a Medicare bad debt only after the collection agency completes its collection effort.

MIM, 13-4, § 4198, Ex. A-11 (emphasis added) (Pl.'s Br., Ex. 3 at 2-59).

7

Finally, HHS issued a policy memorandum dated June 11, 1990, to clarify the bad debt

policy.  The memorandum stated,

> [U]ntil a provider's reasonable collection effort has been completed, including
> both in-house efforts and the use of a collection agency, a Medicare bad debt may
> not be reimbursed as uncollectible.  This is in accord with the fourth criterion in
> section 308 which provides that an uncollected Medicare account cannot be
> considered an allowable Medicare bad debt unless sound business judgment
> established that there is no likelihood of recovery at any time in the future.  We
> have always believed that, clearly, there is a likelihood of recovery for an account
> sent to a collection agency and that claiming a Medicare bad debt at the point of
> sending the account to the agency would be contrary to the bad debt policy in
> section 308 and 310.

¶ 38,623 CCH Medicare & Medicaid Guide 1990 Transfer Binder (Pl.'s Br., Ex. 5 at 1).

In addition, in 1987 Congress enacted a so-called bad debt "moratorium."  The bad debt

moratorium provides:

> In making payments to hospitals under [the Medicare program], the Secretary of Health
> and Human Services shall not make any change in the policy in effect on August 1, 1987,
> with respect to payment under [the Medicare program] to providers of service for
> reasonable costs relating to unrecovered costs associated with unpaid deductible and
> coinsurance amounts incurred under [the Medicare program] (including the criteria for
> what constitutes a reasonable collection effort . . . and for determining whether to refer a
> claim to an external collection agency). The Secretary may not require a hospital to
> change its bad debt collection policy if a fiscal intermediary, in accordance with the rules
> in effect as of August 1, 1987, with respect to criteria for . . . determining whether to refer
> a claim to an external collection agency, has accepted such policy before that date.

Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, sec. 4008(c), 101 Stat.

1330-55, as amended by the Technical Miscellaneous Revenue Act of 1988, Pub. L. No.

100-647, sec. 8402, 102 Stat. 3798, and as further amended by the Omnibus Budget

Reconciliation Act of 1989, Pub. L. No. 101-239, sec. 6023, 103 Stat. 2176 (reprinted in 42

U.S.C. §  1395(f) (1992)).  The Moratorium essentially prevents an FI from disallowing bad

debts for the sole reason that they were referred to a collection agency after a prompt and

continuous collection effort for at least 120 days that had been documented by the provider, if the FI's policy on August 1, 1987, had been to allow these reimbursements.  <u>See</u> Mem. from National Government Services, Medicare Part A, provider audit, to all providers, Feb. 12, 2007, at 1.[3/]

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff provided services to Medicare beneficiaries during fiscal year 1995.  In some instances, the hospital was not reimbursed by the beneficiaries for copayments and coinsurance and it incurred debt as a result.  <u>See</u> Administrative Record ("A.R.") 33-34.  Foothill applied in-house collection efforts to these debts and, after completion of these efforts, wrote off the bad debts and at the same time referred the debts to a collection agency.  Thus, Plaintiff wrote off the bad debts before the collection agency had an opportunity to act on the account.  This policy was applied equally to Medicare and non-Medicare debts.  A.R. 34.

On December 16, 1996, Foothill's FI, United Government Services, issued an NPR disallowing bad debts for Medicare beneficiaries claimed by Foothill in its cost report for the fiscal year ending September 30, 1995.  A.R. 416-23.  Foothill requested a hearing before the Board on June 10, 1997.  A.R. 413.  The PRRB held a hearing on the matter on January 22, 2004, <u>see</u> A.R. 366, and issued a decision on December 19, 2006.  A.R. 18-26.

Citing its decision in <u>Dameron Hospital v. Blue Cross Blue Shield</u>, PRRB Dec. No. 2006-D-16 (Feb. 17, 2006), the Board concluded that the collection efforts documented by Foothill met the Secretary's regulatory requirements.  A.R. 24.  After receiving input from CMS,

---

[3/]        Located at http://www.empiremedicare.com/a&r/bad_debt.pdf.

the Administrator elected to review the December 19, 2006, PRRB decision.[4/]  A.R. 10-11.  On

February 16, 2007, he issued a decision reversing the Board's determination.  A.R. 2-9.  The

Administrator concluded that Foothill failed to establish that the bad debts were "actually

uncollectible" when claimed as worthless or that there was no likelihood of recovery according

to "sound business judgment."  A.R. 6; see 42 C.F.R. § 413.89(d)(3), (4) (then § 413.80(e)(3),

(4)).  The Administrator noted that there was no evidence of record as to Foothill's bad debt

policy for the applicable period (up to and including August 1, 1987) and thus it had failed to

demonstrate that the moratorium applies in this case.  A.R. 8.

Plaintiff seeks review of the Secretary's decision in this Court.  In its Memorandum of

Points and Authorities in Support of Motion for Summary Judgment, it argues that the

Administrator's decision should be reversed for two reasons.  First, it urges that the application

of a policy denying Medicare bad debt reimbursement when those debts remain at a collection

agency violates the bad debt moratorium.  Pl.'s Br. at 12-19.  Second, it contends that the

presumption of collectibility is arbitrary and capricious because it is inconsistent with statutory

and regulatory authority.  Id. at 20-28.  For the reasons set forth below, however, the

Administrator's decision was clearly reasonable, well within his authority, and not in any way

precluded by the moratorium.

---

[4/]    The Administrator of CMS received comments from the CMS Center for Medicare
Management ("CMM"), Chronic Care Policy Group, recommending reversal of the Board's
decision.  CMM noted that in other similar cases in which it had recommended reversal of the
PRRB's decision, the Administrator ultimately reversed the decision.  One such reversal in
PRRB case number 2004-D40 was upheld by the reviewing court in <u>Battle Creek Health
Systems v. Thompson</u>, 423 F. Supp. 2d 755, 761-62 (W.D. Mich. 2006).  A.R. 12-13.

**ARGUMENT**

**I.      The Standard of Review Under the Administrative Procedure Act is Highly Deferential**

Judicial review of the Secretary's final decision regarding Medicare reimbursement is governed by the standards established in the Administrative Procedure Act ("APA"), 5 U.S.C. § 701-706.  See 42 U.S.C. § 1395oo(f)(1); Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Paragon Health Network, Inc. v. Thompson, 251 F.3d 1141, 1145 (7th Cir. 2001); Medical Rehabilitation Services, P.C. v. Shalala, 17 F. 3d 828, 830 (6th Cir. 1994).  Courts "will reverse the Secretary's determination only if it is arbitrary, capricious, not supported by substantial evidence, or otherwise deficient under the standards set forth in 5 U.S.C. § 706." Medical Rehabilitation Services, 17 F.3d at 831.

The courts have consistently held that the APA establishes a narrow standard of review. Under the arbitrary and capricious standard, an agency action may be invalidated only if it is "not rational and based on consideration of the relevant factors."  FCC v. Nat'l Citizens Committee for Broadcasting, 436 U.S. 775, 803 (1978).  The scope of review is particularly narrow when the court reviews an agency's interpretation of its own regulations.  In such cases, courts owe "substantial deference" to the agency's interpretation, which "must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation'" itself. Thomas Jefferson, 512 U.S. at 512 (citations omitted); see also Barnhart v. Walton, 535 U.S. 212, 217-18 (2002) ("Courts grant an agency's interpretation of its own regulations considerable leeway.").  Under this test, courts "must defer to the Secretary's interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'"  Id.  Even when the regulation's

11

text would be more consistent with other constructions, the agency's interpretation must control if it is reasonable and not "demonstrably irrational." Id. at 515; Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980). Where the statute is silent on an issue, courts "must defer to the Secretary's interpretation unless it is unreasonable." Kidney Center of Hollywood v. Shalala, 133 F.3d 78, 86-87 (D.C. Cir. 1998). Absent legal error, the reviewing court must affirm the Secretary's decision, even if the court would have decided the case differently. Stephenson v. Shalala, 87 F.3d 350, 354 (9th Cir. 1996). This "broad deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,'" in which interpretive decisions "'necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" Thomas Jefferson, 512 U.S. at 512 (quoting Pauley v. BethEnergy Mines, Inc., 501 U.S. 680, 697(1991)). As the Sixth Circuit confirmed, "an administrative agency's interpretation of its own regulation is accorded considerable deference on judicial review unless it is inconsistent with the terms of the regulation, especially in areas like Medicare reimbursements." Medical Rehabilitation Services, 828 F.3d at 831 (citing University of Cincinnati v. Heckler, 733 F.2d 1171, 1173-74 (6th Cir. 1984)).

Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).

In this case, there is no genuine issue of material fact. As a matter of law, the Secretary's actions were clearly not arbitrary, capricious, or an abuse of discretion. To the contrary, the

Secretary acted reasonably and in full compliance with all statutory and regulatory requirements under any standard of review. For this reason, the Secretary's Motion for Summary Judgment should be granted.

## II.    The Secretary's Decision Was Not Arbitrary or Capricious

Plaintiff claims that the Secretary's decision was arbitrary and capricious and therefore should be reversed. Pl.'s Br. at 20. To the contrary, the Secretary's decision at issue in this case did not violate the standards established in § 706(2)(A) of the APA and, therefore, it must be affirmed. The Secretary's decision must be affirmed because it was founded on the Secretary's reasonable interpretation of a validly promulgated regulation. The Secretary reasonably interpreted the Medicare requirements for reimbursement of bad debts, 42 C.F.R. § 413.80(e). Affording the requisite deference to the agency's interpretation of its own regulations necessitates an affirmance of the Secretary's decision. See Thomas Jefferson Univ, 512 U.S. at 512 (agency's interpretation of its own regulations has controlling weight as long as it is not plainly erroneous or inconsistent with the language of the regulations.)[5]

### A.    The Secretary's Determination Regarding the Reimbursement of Plaintiff's Bad Debt is Consistent With His Regulations.

1.    As noted above, it is well settled that an agency's interpretation of its own regulations is

---

[5]    To the extent Foothill argues that the Secretary's decision is contrary to the statute, that argument is foreclosed by a prior decision of the D.C. Court of Appeals. Because the statute is completely silent on questions of reimbursement for bad debts, the Secretary is free to promulgate any reasonable policy on that subject. See Kidney Center of Hollywood, 133 F.3d at 86-87.

13

entitled to a high level of deference.  Christensen v. Harris Corp., 529 U.S. 576, 587 (2000);

Thomas Jefferson, 512 U.S. at 512 (entitled to "substantial deference").  Where, as here, the

statute is silent on an issue, courts "must defer to the Secretary's interpretation unless it is

unreasonable."  Kidney Center of Hollywood, 133 F.3d at 86-87.  The applicable standard of

review is governed by the APA which provides that the agency's decision will be set aside only

if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . .

or unsupported by substantial evidence."  5 U.S.C. § 706(2)(A), (E); See Cmty Hosp. of the

Monterey Peninsula v. Thompson, 323 F.3d 782, 792 (9th Cir. 2003).  In the instant case, the crux

of the Administrator's decision is the interpretation of the Secretary's own regulation at 42

C.F.R. § 413.89(e):  the criteria for claiming allowable bad debt.

Deference is heightened for an agency's interpretation of a statute or regulation that is

consistent through time.  Thomas Jefferson Univ., 512 U.S. at 515.  The Secretary has

consistently interpreted 42 C.F.R. § 413.89(e) to require that a provider must demonstrate that it

has completed its collection effort, including outside collection, before claiming the debt as

worthless.  See A.R. 1-9; see also Battle Creek Health Sys. v. Blue Cross Blue Shield Assoc.,

No. 2004-D40, 2004 WL 3049346 (CMS Administrator, Nov. 12, 2004); Sutter Merced Medical

Ctr. v. Blue Cross Blue Shield, No. 2006-D56, 2006 WL 3923166 (CMS Administrator, Nov. 22,

2006).  Plaintiff asserts that the Secretary's decision here conflicts with 1995 and 2000 PRRB

decisions allowing Medicare bad debt claims even though the accounts had been transferred to a

collection agency for further collection.  Pl.'s Br. at 23-25.  Foothill contends that the regulation

is therefore entitled to less deference.  Id. at 23.  However, any contrary PRRB decisions made in

the context of individual claims adjudication are not precedential and do not establish

14

inconsistency in the <u>Secretary's</u> policy-making position.  <u>Cf.</u> PRM § 2927 ("Decisions by the Administrator are not precedents for application to other cases."); <u>see also</u> <u>Community Care Found. v. Thompson</u>, 318 F.3d 219, 226-27 (D.C. Cir. 2003) (PRRB decisions do not bind the Secretary).

        In <u>Battle Creek Health Systems v. Thompson</u>, a case strikingly similar to the instant one, the court found that the Secretary's decision to deny Medicare reimbursement for bad debts claimed by hospitals was not arbitrary or capricious since the bad debts at issue had been turned over to an outside collection agency and thus were not actually uncollectible in the cost year that the providers claimed the debts were worthless; sound business judgment had not established that there was no likelihood of recovery in the future.  423 F. Supp. 2d 755, 761 (W.D. Mich. 2006), <u>aff'd</u>, 498 F.3d 401 (6th Cir. 2007).  The provider in that case had relied upon the presumption found at PRM § 310.2 that after 120 days of "reasonable and customary" collection efforts, the bad debt may be deemed uncollectible.  <u>Id.</u> at 760.  The court rejected the provider's argument that the debts did not have to be shown to be actually uncollectible and made the following observation:

> To permit a provider to deem a debt uncollectible after 120 days for Medicare reimbursement purposes but to continue its efforts to collect the debts would be inconsistent with the requirements that the debt was actually uncollectible and there was no likelihood of future collection.  Such an interpretation would transform the four-requirement statute into a two-requirement statute: (1) The debt must be related to covered services and derived from deductible and coinsurance amounts and (2) the provider must be able to establish that reasonable collection efforts were made for 120 days.  The court cannot conclude that it was arbitrary or capricious, or inconsistent with Medicare policy for the Secretary to interpret section 310.2 of the PRM in a manner that gave effect to each of the four requirements.

<u>Id.</u> at 761.

15

Here, consistent with the conclusion reached by the district and circuit courts in <u>Battle Creek</u>, the Secretary appropriately determined that the presumption of non-collectibility only applies where a provider has otherwise demonstrated that it has engaged in a reasonable collection effort, including proper documentation to show that the debt is actually uncollectible and with no likelihood of recovery when it is written off as reimbursable by Medicare.  A.R. 7. A contrary result would mean that the third and fourth criteria found in the Secretary's regulation at 42 C.F.R. § 413.89(e) are meaningless because providers could be reimbursed for any Medicare debt after they had engaged in a reasonable collection effort for at least 120 days.  <u>See Battle Creek</u>, 498 F.3d at 411.  There would be no need for the provider to show that the debt was actually uncollectible or that sound business judgment established that there was no likelihood of recovery.

Interpretive tools, such as the Medicare manuals or policy memorandums, "are entitled to respect to the extent that those interpretations have the power to persuade and, so long as these interpretive sources are not inconsistent with promulgated regulations or outside of coverage of the Act, they are valid."  <u>Battle Creek</u>, 498 F.3d at 413 (citation omitted).  The Intermediary Manual is explicit that where a debt has been referred to a collection agency, it cannot be claimed as a Medicare bad debt on the date of the write-off.  MIM, 13-4, § 4198, Ex. A-11 (Pl.'s Br., Ex. 3 at 2-59).  Moreover, Plaintiff was on express notice that its practice of writing off Medicare bad debt was contrary to established Medicare policy via CMS's policy memorandum. The June 11, 1990, memorandum stated that the agency's "intent has always been that section 310.2 be read within the context of the bad debt policy provided in sections 308 and 310."  Thus, the provider could not write off the Medicare debt where, as here, it was concurrently being sent

16

to a collection agency, see A.R. 7, 22, 34, but must wait until the collection agency stops pursuing the account for collection.  Only at that point is the debt being treated as uncollectible by the collection agency and at that point sound business judgment establishes that there is no likelihood of recovery.  See MIM, 13-4, § 4198, Ex. A-11.[6]

In sum, the Secretary reasonably determined that to permit a provider to deem a debt uncollectible but continue its effort to collect the debt would be inconsistent with the requirements that the debt actually be uncollectible and there be no likelihood of future collection.  The presumption of uncollectibility advanced by Plaintiff would impermissibly transform a four-requirement statute into a two-requirement statute:  (1) The debt must be related to covered services and derived from deductible and coinsurance amounts, and (2) the provider must be able to establish that reasonable efforts were made for least 120 days.  Thus, it was reasonable for the Secretary to interpret 42 C.F.R. § 413.89(e) in a manner that gives effect to each of the four requirements.

2.    Plaintiff insists that the fact that PRM-I § 310.2 provides that a debt "may" be deemed uncollectible (rather than "shall" be deemed uncollectible) if it remains unpaid for more than 120 days is meaningless since courts have construed the term "deemed" to establish a conclusive presumption.  Pl.'s Br. at 21.  The cases cited by Plaintiff in support of this contention, however,

---

[6]    Although Plaintiff has characterized the Secretary's instruction in the MIM as establishing an impermissible presumption of collectibility (Pl.'s Br. at 19), there is no reference in the text to any presumptive effect to the requirement that a provider have ceased all collection activities, including in-house activities and the use of a collection agency, before claiming a Medicare bad debt as uncollectible.  Rather, this Medicare policy, consistent with the plain meaning of regulatory criteria of 42 C.F.R. § 413.89 (e)(3) and (e)(4), merely requires that the provider actually establish through appropriate documentation that it has completed its collection effort, including outside collection, before claiming debts as worthless.

do not define the term "deemed" where it is preceded by "may", only where preceded by "shall."
See Mun. Resale Serv. Customers v. FERC, 43 F.3d 1046, 1053 (6th Cir. 1995) ("shall be
deemed"); Ohio Power Co. v. FERC, 880 F.2d 1400, 1413 (D.C. Cir. 1989) ("shall be deemed");
H.P. Coffee Co. v. Reconstruction Finance Corp., 215 F.2d 818, 822 (Emer. Ct. App. 1954)
("shall be deemed"). The term "may" is permissive, while the term "shall" "indicates an intent to
'impose discretionless obligations.'" Lopez v. Davis, 531 U.S. 230, 241 (2001). Thus, the PRM
leaves clearly open the possibility that a debt may be deemed collectible at the end of the 120
day period where for example, as here, it has been referred to a collection agency.

Plaintiff cites the Dameron PRRB decision in support of the contention that accounts
referred to collection agencies are not presumptively collectible. Dameron Hospital v. Blue
Cross Blue Shield Ass'n, PRRB Hearing Dec. No. 2006-D16 (Feb. 17, 2006). The Secretary
agrees. Though, while an account referred to a collection agency may be determined to be non-
collectible, that determination is a practical impossibility where the debt is claimed for
reimbursement purposes at the same time it is referred to the collection agency, thereby giving
the collection agency no opportunity to exercise its own reasonable collection efforts and
essentially obviating the need for the referral in the first place. In Dameron, 30 to 60 days had
passed between the time that the debt was referred to a collection agency and the time it was
considered reimbursable by the plaintiff for Medicare cost reporting purposes. See Dameron v.
Leavitt, No. S-06-1360 FCD/KJM, 2007 WL 2288289, at *3 (E.D. Cal. Aug. 8, 2007). Here,
the debt was included on Foothill's cost reports at the same time it was referred to the collection
agency. Therefore, it could not reasonably be considered uncollectible at that point.

Finally, Plaintiff urges that the Secretary himself disseminated conflicting information regarding bad debt policy and apparently contends that, as such, the policy should be disregarded.  Pl.'s Br. at 25-27.  In support of this contention, Plaintiff references correspondence between a provider and a CMS regional office and a cover memo to the June 1990 CMS memo written by an FI.  Id. at 25-26.  However, conflicting direction from the agency does not conclusively establish an inconsistency in the Secretary's policy-making position.  See, e.g., Washington Hosp. Ctr. v. Bowen, 795 F.2d 139, 144 n. 5 (D.C. Cir. 1986) (conflicting regulations need to be reconciled or rejected but do not represent a reversal in the Secretary's interpretation); St. Francis Hosp. v. Heckler, 714 F.2d 872, 874 (7th Cir. 1983) (the district court's deference to the Secretary's decision was appropriate where the Secretary reversed the PRRB).  Similarly, in Thomas Jefferson, the Court refused to give less deference to an allegedly inconsistent policy, which was expressed in an internal operating memo, and an allegedly inconsistent FI decision, finding that "even if petitioner could show that such allowance was approved by– or even brought to the attention of– the Secretary or her designate at the time, [t]he Secretary is not estopped from changing a view she believes to have been grounded upon a mistaken legal interpretation."  512 U.S. at 515-17 (quoting Good Samaritan Hospital v. Shalala, 508 U.S. 402, 417 (1993)); see also Homemakers N. Shore v. Bowen, 832 F.2d 408, 413 (7th Cir. 1987) (holding that the fact that the Secretary's "minions" have expressed differing views on an issue does not make the Secretary's ultimate policy on that issue invalid and merely reflects that "the Department of Health and Human Services is a mammoth bureaucracy with

seemingly endless layers of internal review, and that reasonable people disagree" about the meaning of a regulation). The same holds true in this case.[7]

The two instances of "confusion" regarding the Secretary's bad debt policies by staff in one CMS region and one FI are hardly sufficient to show that the Secretary's decision here is unlawful. It is of no moment that these staff may have failed to fully understand the Secretary's bad debt policy. What matters is that the Secretary understands it and applied it here.

It is also far from clear that the two instances Foothill relies on are actually inconsistent with the Secretary's decision in this case. For instance, in the case of the correspondence between the provider and the CMS regional office, it appears that the author of the CMS response focused on the issue of whether the provider treated Medicare and other debt similarly: "'B' is appropriate since it specifies that both Medicare and non-Medicare claims have been written off their books as accounts receivable." Pl.'s Br. at 26. Although the answer not chosen (answer "A") contains a statement consistent with the Secretary's holding in this case, it is not clear that the author of the CMS correspondence considered that statement to be incorrect, just not the more appropriate answer to the proffered question.

---

[7]    Plaintiff questions whether the Secretary initially had a policy of not allowing bad debt reimbursement where claims are reported at the time the debt is referred to a collection agency, abandoned the policy, and then revived it with no notice to providers. Pl.'s Br. at 27. This is nothing more than Plaintiff's bare speculation, however, and as established in this motion is completely without merit. To the contrary, CMS has been applying its bad debt policies to the facts present in each individual case in order to determine whether reimbursement for the bad debt claim is allowable. For the reasons set forth in this motion, under these particular factual circumstances, reimbursement for Plaintiff's bad debt claims are not allowable. Even if Plaintiff's allegation were true, however, and the Secretary did reverse an earlier policy, this does not advance Plaintiff's argument that it is entitled to reimbursement here since, as noted *supra*, it is perfectly permissible for the Secretary to change a view he believes to be based on a mistaken legal interpretation. Thomas Jefferson, 512 U.S. at 515-17.

Similarly, the FI cover letter to the CMS June 1990 policy memorandum is not inconsistent with the decision here, because it states that no payment for bad debts can be made "where there is evidence that such [debts] are in fact collectible." Id. Here, there is such evidence, since it is reasonable to conclude that a debt that has just been referred to a collection agency cannot be deemed uncollectible until the agency has the opportunity to do at least some work to collect it. As a result, in relying on these two instances of alleged inconsistency, Foothill falls far short of carrying its burden of showing, with particulars, that the Secretary has unlawfully treated differently providers in similar circumstances. See PIA Michigan City v. Thompson, 292 F.3d 820, 826, 830 (D.C. Cir. 2002).

**B.    Substantial Evidence Supports the Secretary's Finding That, Because Plaintiff Claimed the Debt on its Cost Report at the Same Time it Forwarded the Debt to a Collection Agency, it did not Believe the Debt Was Actually Uncollectible When Claimed as Worthless**

As set forth above, after at least 120 days of reasonable and customary collection efforts, it is within the discretion of the provider to either continue collection efforts or cease collection efforts and deem the debt uncollectible. The Secretary merely requires that a provider take one course or the other in order to satisfy the four criteria entitling a provider to reimbursement. However, under the applicable Medicare rules, once a provider decides to utilize a collection agency, all uncollected charges of like amount, both Medicare and non-Medicare patient charges have to be referred to the collection agency. PRM § 310; Mt. Sinai Hospital Medical Center v. Shalala, 196 F. 3d 703, 708 (7th Cir. 1999). When a debt is referred to a collection agency, the date of write off should be the date that the collection agency ceases its efforts. See MIM, 13-4, § 4198, Ex. A-11. Here, the provider claimed the Medicare bad debts for reimbursement on its cost report at the time that the debts were forwarded to a collection agency. See A.R. 7, 22, 34.

21

The collection agency did not have an opportunity to initiate its own collection efforts and it had never determined that the debts were uncollectible or returned the debts to the provider. Because the provider had just begun to attempt collection of the debt through the efforts of the collection agency, it was reasonable for the intermediary to conclude that the provider still considered the debt to have potential value.

**III.    The Bad Debt Moratorium Does not Allow for Reimbursement for the Bad Debts at Issue Here.**

It is well settled that the bad debt moratorium does not preclude changes in Medicare payment policies after August 1, 1987. The moratorium as originally enacted provided, in pertinent part, that "[i]n making payments to hospitals . . . the Secretary . . . shall not make any change in the policy in effect on August 1, 1987, with respect to payment . . . to providers . . . ." Pub. L. No. 100-203, § 4008, 101 Stat. 1330, 1355 (1987). The moratorium was later explicitly clarified, in pertinent part, as follows:

> Sec. 6023.  Clarification of Continuation of August 1987 Hospital Bad Debt Recognition Policy.  (a) In general – Section 4008(c) of the Omnibus Budget Reconciliation Act of 1987 is amended by adding at the end of the following: "The Secretary may not require a hospital to change its bad debt collection policy if a fiscal intermediary . . . has accepted such policy before that date . . . ."  (b) Effective date – The amendment made by subsection (a) shall take effect as if included in the enactment of the Omnibus Budget Reconciliation Act of 1987.

Pub. L. No. 101-239, § 6023, 103 Stat. 2106, 2167 (1989) (emphasis added). While the plain language of the Act and the clarification that followed reflects that it precluded changes in the Secretary's acceptance of the bad debt policies of <u>particular providers</u>, not changes in the Secretary's policies overall, Plaintiff advances the novel argument that the moratorium actually prevents the Secretary from making any changes to his pre-1987 bad debt policies as applied across the board. Pl.'s Br. at 16. This reading is inconsistent with the conclusions reached by

courts, however, all of which have consistently applied the bad debt moratorium to preclude only the Secretary's changing his view of the allowability of a provider's bad debt policies if the Secretary had previously accepted those policies and they had been in accordance with the Secretary's rules as of August 1, 1987.[8/]

Similarly, the Conference Report to the Technical and Miscellaneous Revenue Act of 1988 states that in order for the bad debt moratorium to apply, the intermediary must affirmatively approve a provider's policy and that approval must not be inconsistent with the regulations and program instructions.  H.R. Rep. No. 1104, 100th Cong., 2d Sess. 277 (1988), reprinted in 1988 U.S. Code & Cong. Ad. News at 5337.  Here, the Board and the Administrator both ruled that Plaintiff had failed to submit evidence of its bad debt policy prior to August 1, 1987.  Plaintiff does not dispute this fact.  See Pl.'s Br. at 12.  Because Foothill cannot show that its pre-August 1987 bad debt practices were consistent with the Secretary's rules, the moratorium does not apply here and the Secretary was permitted to disallow Foothill's bad debt expenses because they were claimed on its cost report at the same time they were referred to a collection agency, without opportunity for the agency to undertake any collection efforts

---

[8/]    See, e.g., Univer. Health Servs. v. HHS, 120 F.3d 1145, 1152 (11th Cir. 1997) ("Congress intended the moratorium to apply only where a provider was in compliance with rules existing on August 1, 1987 "); Hennepin Co. Medical Ctr. v. Shalala, 81 F.3d 743, 750-51 (8th Cir. 1996) ("for acceptance to trigger the terms of the moratorium, the provider's bad debt collection practices must have been consistent with Medicare rules existing in 1987 "); Harris County Hosp. Dist. v. Shalala, 64 F.3d 220, 222 (5th Cir. 1995) (OBRA prohibits forcing a change in hospital policy); Detroit Receiving Hosp. v. Shalala, 999 F. Supp. 944, 950 (E.D. Mich. 1998) ("The moratorium has two elements.  First, the intermediary must have 'accepted' the hospital's bad debt collection policy.  Second, the acceptance must have been 'in accordance with' the bad debt reimbursement rules in effect on August 1, 1987.").

whatsoever, in contravention with MIM,13-4, § 4198, Ex. A-11.  Plaintiff has offered up no cognizable argument to overcome this fact.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that this Court grant his motion for summary judgment, deny Plaintiff's motion for summary judgment, and affirm the Administrator's decision.


Respectfully submitted,


 /s/_____
JEFFREY A. TAYLOR
United States Attorney
D. C. Bar No. 498610



 /s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
N.Y. Reg. No. 4202982
United States Attorney's Office
Civil Division
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

/s/_____

LINDA KEYSER
Attorney
U.S. Department of Health and Human Services
Office of the General Counsel
Centers for Medicare & Medicaid Services Division
Room 5327D, Cohen Building
330 Independence Avenue, S.W.
Washington, D.C. 20201
202-205-8779
Facsimile: (202) 401-1405

Counsel for Defendant

OF COUNSEL:

JAMES C. STANSEL
Acting General Counsel

JANICE HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
    Counsel for Litigation

United States Department of
    Health and Human Services

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| FOOTHILL HOSPITAL - MORRIS L. JOHNSTON MEMORIAL, a California nonprofit corporation, dba Foothill Presbyterian Hospital, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 01:07-CV-00701 (ESH) |
| MICHAEL O. LEAVITT, Secretary of Health and Human Services, | ) ) ) | **ECF** |
| Defendant. | ) ) ) | |

## <u>ORDER</u>

Upon consideration of the parties' cross-motions for summary judgment, oppositions and replies thereto, and the entire record herein, it is this _____ day of _____, 2008,

ORDERED, that Plaintiff's Motion for Summary Judgment be, and hereby is, DENIED; and it is further

ORDERED, that Defendant's Motion for Summary Judgment be, and hereby is, GRANTED; and it is further

ORDERED, that judgment be, and hereby is, entered in favor of Defendant and against Plaintiff.

_____
ELLEN S. HUVELLE
United States District Judge

Copy to: ECF Counsel