UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FOOTHILL HOSPITAL - MORRIS L. JOHNSTON MEMORIAL, a California nonprofit corporation, dba Foothill Presbyterian Hospital,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL O. LEAVITT, Secretary of Health and Human Services,<br><br>    Defendant. | Case No. 01:07-CV-00701 (ESH)<br><br>**ECF** |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

On November 2, 2007, Plaintiff filed a Motion for Summary Judgment in the above-captioned case. Pl.'s Mem. of Points & Authorities in Support of Pl.'s Mot. for Summ. J. (Pl.'s Mot.), Nov. 2, 2007. Defendant, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services (the Secretary), moved for summary judgment in this matter on March 3, 2008. See Def.'s Mem. of Points & Authorities in Support of Def.'s Mot. for Summ. J. & in Opp. to Pl.'s Mot. for Summ. J. (Def.'s Mot.), Mar. 3, 2008. On April 2, 2008, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment & Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment See Pl.'s Mem. of Points & Authorities in Opp. to Def.'s Mot. for Summ. J. & in Reply to Def.'s Opp. to Pl.'s Mot. for Summ. J. (Plaintiff's Reply or Pl.'s Reply), Apr. 2, 2008. Defendant hereby replies to Plaintiff's Reply and urges that, for the reasons articulated below and in the Secretary's opening brief, this Court

should grant the Secretary's motion for summary judgment and deny Plaintiff's motion for summary judgment.

In his opening memorandum, Defendant established that he is entitled to summary judgment because (1) the applicable standard of review under the Administrative Procedure Act (APA) is highly deferential; (2) the Secretary's challenged decision was reasonable, consistent with his regulations, and supported by substantial evidence; and (3) the statutory bad debt moratorium does not require reimbursement for the bad debts at issue here. Plaintiff has failed to refute any of these well-established premises.

Initially, the bad debt moratorium does not preclude the Secretary from changing his overall bad debt policies after August 1, 1987. Rather, the moratorium merely prevents any change with regard to a particular debt collection policy pertaining to an individual provider. Further, even if the moratorium did prevent overall bad debt policy changes after August 1, 1987, the policy in question here was adopted in regulations and manual provisions issued prior to August 1, 1987, and well before the effective date of the 1989 Medicare Intermediary Manual (MIM) provision that Plaintiff references.

Moreover, the Secretary's decision in this case is neither arbitrary nor capricious. First, his interpretation of the regulation in question here is entitled to substantial deference. Second, the underlying decision in this case is entirely consistent with other bad debt policy. Plaintiff argues that the "policy" prohibiting reimbursement of bad debts that remain at outside collection agencies was only initially announced in the Battle Creek case, adjudicated in 2004, and therefore cannot be applied "retroactively" in the instant case. See Battle Creek Health Sys. v. Thompson, 423 F. Supp. 2d 755, 761 (W.D. Mich. 2006), aff'd sub nom. Battle Creek Health

Sys. v. Leavitt, 498 F.3d 401 (6th Cir. 2007).  To the contrary, since adjudications are inherently retroactive, there was nothing impermissible in the Secretary's determining, either in Battle Creek or here, that claims for reimbursement for bad debts pertaining to a prior period should be disallowed.

Finally, Plaintiff for the first time in its Reply raises the argument that the decision in this case constitutes rulemaking subject to notice and comment requirements.  This new argument should not be considered.  In any event, Plaintiff's assertion is without merit because a description of the provision at issue was published in the Federal Register as required by the statute.

As discussed in more detail below, Plaintiff's arguments are without merit and are not persuasive.  In most instances, these assertions have already been advanced by Plaintiff and rebutted by Defendant in his opening memorandum.  For the most part, they amount to little more than hyper-technical (and, ultimately, incorrect) lawyer's arguments intended to distract the Court from the common-sense conclusion that lies at the heart of the Secretary's decision–namely, that a hospital's debt cannot reasonably be judged worthless at the same time the hospital refers that debt for collection to an outside agency.  Two federal courts in Battle Creek have already affirmed such a decision.  This Court should do so also.

**ARGUMENT**

I. **THE BAD DEBT MORATORIUM DOES NOT IMPACT THE ISSUE OF REIMBURSEMENT FOR THE BAD DEBTS IN THIS CASE.**

A. <u>The Bad Debt Moratorium Does Not Preclude the Secretary From Changing His Overall Bad Debt Policies After August 1, 1987</u>

As the clarification to the moratorium made clear, the bad debt moratorium was intended to apply to the Secretary's position with regard to a particular hospital's bad debt policy.

> The Secretary may not require a hospital to change its bad debt collection policy if a fiscal intermediary . . . has accepted such policy before that date. . . . The amendment . . . shall take effect as if included in the enactment of the Omnibus Budget Reconciliation Act of 1987.

Pub. L. No. 101-239, § 6023, 103 Stat. 2106, 2167 (1989).

Plaintiff apparently contends that the clarification to the moratorium was not a clarification, but rather a separate provision to be read independently. <u>See</u> <u>generally</u> Pl.'s Reply at 3-9. It apparently urges that the clarification merely imposed an additional requirement on the Secretary with regard to individual hospital policies, on top of the other requirement pertaining to bad debt policy as a whole that the first paragraph of the moratorium had earlier imposed. <u>Id.</u> Plaintiff is plainly incorrect on this point, however.

The 1989 statute was titled "<u>Clarification</u> of Continuation of August 1987 Hospital Bad Debt Recognition Policy." Pl.'s Mot. at 15 (emphasis added). Further, as noted above, subsection (b) of the statute provided that the amendment take effect as if included in the original statute. Pub. L. 101-239, § 6023, 103 Stat. 2106, 2167 (1989). Congress could not have been more clear in its intent that the 1989 statute serve as a clarification of the 1987 law, not as an additional requirement.

In support of Plaintiff's position that, under its first paragraph, the moratorium applies to all the Secretary's bad debt policies globally, it takes issue with Defendant's reliance on several cases and urges that these cases are not instructive. See Pl.'s Reply at 4-9.

In his opening brief, Defendant cited to Detroit Receiving Hosp. v. Shalala, 999 F. Supp. 944, 950 (E.D. Mich. 1998). Def.'s Mot. at 23 n.8. Plaintiff is correct that in an unpublished disposition, the Court of Appeals later partially vacated and remanded this decision. See Detroit Receiving Hosp. v. Shalala, 194 F.3d 1312 (table), No. 98-1429, 1999 WL 970277 (6th Cir. Oct. 15, 1999). But it is incorrect to suggest that this case aids its cause. Notably, in its decision, the court of appeals observed "that since [the Centers for Medicare & Medicaid Services] really stands in the shoes of the taxpayers with respect to reimbursing hospitals, it is not an unreasonable policy to require hospitals to exhaust every available avenue to collect Medicare bad debt before the taxpayers are required to reimburse them." Id. at *5 (emphasis added).

Further, the court of appeals' decision in Detroit Receiving explicitly supports the Secretary's view of the moratorium as expressed in his opening brief. The court of appeals noted that the district court had found that the moratorium consisted of two requirements: that Medicare had "accepted" the hospital's bad debt policy and that that acceptance was "in accordance with" the bad debt reimbursement rules in effect on August 1, 1987. Id. at *7. The parties to the appeal did "not disagree" that these were the two distinct requirements of the moratorium. Id. The decisions in Harris County, Hennepin County, and University Health, cited in the Secretary's opening brief and summarized in Detroit Receiving, also all frame the applicability of the moratorium in similar terms, although they disagree about what constitutes "acceptance" of a provider's bad debt policies and when that acceptance can be said to be "in

accordance with" the rules existing on August 1, 1987. Univer. Health Servs. v. HHS, 120 F.3d 1145, 1152 (11th Cir. 1997); Hennepin County Medical Ctr. v. Shalala, 81 F.3d 743, 747-49 (8th Cir. 1996); Harris County Hosp. Dist. v. Shalala, 64 F.3d 220, 222 (5th Cir. 1995); see Detroit Receiving, 1999 WL 970277, at *7-*8. It was on this latter basis that the court of appeals in Detroit Receiving found fault with the district court's decision: it reversed the district court's conclusion that Medicare's "acceptance" of the provider's bad debt policy via payment of its submitted claims for reimbursement had not been "in accordance with" the rules in effect on August 1, 1987, and remanded for further consideration. Detroit Receiving, 1999 WL 970277, at *12-*13. Counsel for the Secretary is unable to locate any reported decision describing the outcome of the remand.

Based on the foregoing, it is clear that Detroit Receiving offers no comfort to Plaintiff. As the Secretary found, there is no evidence here as to what Plaintiff's bad debt policy was prior to August 1, 1987, let alone any evidence that the Secretary had "accepted" that policy by paying Plaintiff's claims for bad debt reimbursement. Administrative Record (A.R.) 8 n.7. As a result, the moratorium does not apply in this case, even as interpreted in the court of appeals' decision in Detroit Receiving. One never even reaches the "in accordance with" prong of the moratorium because Plaintiff cannot meet the "acceptance" prong.

Plaintiff alleges that two cases cited by Defendant in his opening brief, Univer. Health Servs., 120 F.3d at 1152, and Hennepin County, 81 F.3d at 747-49, are not relevant in the instant case because they pertain to fiscal years before the moratorium took effect. Pl.'s Reply at 4-5. However, just as with the Detroit Receiving case, the Secretary cited these cases in his memorandum for the narrow proposition that the moratorium prevents the Secretary from

changing his view of the allowability of a particular provider's bad debt policies if he had previously accepted those policies and that acceptance was in accordance with the Secretary's rules as of August 1, 1987.  Def.'s Mot. at 23 n.8.  While it is accurate to say that pre-1987 bad debt was at issue in both cases, the court's interpretation of Congress's intent in this regard is no less valid.

Plaintiff urges that Univer. Health Servs., 120 F.3d at 1152, and Hennepin County, 81 F.3d at 747-49, as well as another case cited by Defendant, Harris County, 64 F.3d at 222, pertain only to the second paragraph of the policy.  Pl.'s Mot. at 5.  Plaintiff apparently argues that, while those cases do reference agency bad debt policy with regard to a particular hospital, they are not on point here because Plaintiff's case hinges on the first paragraph of the moratorium, which it argues precludes changes in agency bad debt policy overall after August 1, 1987.  As explained *supra* at 4, however, this interpretation is inconsistent with congressional intent, which was that the second paragraph was a clarification of the first and that the effective date of the clarification be retroactive to August 1, 1987.

Finally, Plaintiff contends that briefs filed by the Secretary in prior similar cases argue that after August 1, 1987, the Secretary does not have the right to change overall bad debt policies, rather than just policy with regard to a particular provider.  See Pl.'s Reply at 7-9.  As explained above, Congress labeled the second paragraph a "clarification" of the first, so its intent was clear that the 1989 amendment be an explanation or clarification of the 1987 law, not a new requirement.  To the extent the Secretary has suggested anything to the contrary in other briefs, that is irrelevant to the matter at hand.  None of the undersigned counsel were involved in the other matters referenced in Plaintiff's Reply and therefore have no knowledge of the context for

or basis of those purported arguments. More importantly, however, this Court is charged with the responsibility of construing the statute and is obviously not bound by counsel's statements in another unrelated case. Any statements to the contrary in other matters carry no weight in reaching a just and proper decision in this case. Certainly, Plaintiff would not agree that the Court must accept a statutory construction simply because it had been stated by government counsel in other cases. Just as the government could not get the benefit of such an interpretive approach, neither can Plaintiff here.

B.  Even if the Moratorium Prevents Overall Bad Debt Policy Changes After August 1, 1987, the Policy in Question Here was Adopted Prior to the 1989 Medicare Intermediary Manual Provision Plaintiff References

Even if Plaintiff is correct that the second paragraph of the bad debt moratorium is an addition to, rather than a clarification of, the first paragraph (and that therefore any change in bad debt policy after 1987 is precluded), Plaintiff's argument that the 1989 MIM policy is invalid under the moratorium fails because in fact the Secretary adopted the policy in question well before the 1989 MIM provision that Plaintiff references. Plaintiff's theory is that the first paragraph of the moratorium prevents the Secretary from changing any agency bad debt policy after August 1, 1987. Plaintiff further contends that the Secretary has improperly relied on a provision of the MIM first adopted in 1989, after the alleged moratorium against bad debt policy changes took effect. See Pl.'s Mot. at 17. This is incorrect, however. It was never necessary for Defendant to rely on the MIM provision to reach the determination made here. Defendant's decision to deny Plaintiff reimbursement for the bad debts it claimed at the same time it referred them to a collection agency derives from a straightforward application of the regulatory

standards governing bad debt. See 42 C.F.R. § 413.89(e) (enacted in 1966)[1]. Specifically, the regulation requires:

> (1) The debt must be related to covered services and derived from deductible and coinsurance amounts.
> (2) The provider must be able to establish that reasonable collection efforts were made.
> (3) <u>The debt was actually uncollectible when claimed as worthless.</u>
> (4) <u>Sound business judgment established that there was no likelihood of recovery at any time in the future.</u>

Id. (emphasis added); see also Def.'s Mot. at 5. The district court opined as much in Battle Creek, 423 F. Supp. 2d at 761, which upholds the Secretary's decision as an application of the regulations and Program Review Manual (PRM) provisions, not the MIM policy.[2]

> To permit a provider to deem a debt uncollectible after 120 days for Medicare reimbursement purposes but to continue its efforts to collect the debts would be inconsistent with the requirements that the debt was actually uncollectible and there was no likelihood of future collection. Such an interpretation would transform the four-requirement statute into a two-requirement statute: (1) The debt must be related to covered services and derived from deductible and coinsurance amounts and (2) the provider must be able to establish that reasonable collection efforts were made for 120 days. The court cannot conclude that it was arbitrary or capricious, or inconsistent with Medicare policy for the Secretary to interpret section 310.2 of the PRM in a manner that gave effect to each of the four requirements.

Battle Creek, 423 F. Supp. 2d at 761; see also Def.'s Mot. at 15. Thus, even if the Court were to conclude that the MIM provision was prohibited by the moratorium, policies existing before the date of the moratorium support the Secretary's decision denying bad debt reimbursement here. See Detroit Receiving, 1999 WL 970277, at *13 (Congress sought to freeze the law as it existed

---

[1] See 31 Fed. Reg. 14813 (Nov. 22, 1966).

[2] Importantly, the applicable regulation and PRM provisions were adopted in 1966 and 1983, respectively, prior to August 1, 1987. 42 C.F.R. § 413.89(e); PRM § 310.2; PRM § 316.

9

prior to August 1, 1987; that law encompassed the regulation, which required a reasonable collection effort).

## II.    THE SECRETARY'S DECISION IS NEITHER ARBITRARY NOR CAPRICIOUS AND IS CONSISTENT WITH LEGAL AUTHORITY

1.      As noted in the Secretary's opening brief, the appropriate standard of review in this case under the Administrative Procedure Act is one of substantial deference to the agency's decision. The agency's interpretation of its own regulations must be given controlling weight unless plainly erroneous or inconsistent with the regulation. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994). Plaintiff urges that an inconsistency lies in the fact that the Secretary allegedly issued a conflicting opinion in Lourdes Hospital v. Blue Cross Blue Shield Ass'n, Oct. 27, 1995, CCH Medicare and Medicaid Guide, ¶ 43,723. As such, it argues, the Secretary's decision here should be entitled to only limited deference. Pl.'s Reply at 10-12. However, as the Secretary has already pointed out, he "is not estopped from changing a view [he] believes to have been grounded upon a mistaken legal interpretation." Thomas Jefferson, 512 U.S. at 515-17 (quotation omitted). That is especially true where, as here, the Secretary is acting through adjudication to render decisions in individual cases that he has announced are not precedential in future cases. See Def.'s Mot. at 14-15. The Secretary has already addressed at length the issue of alleged inconsistencies with the Secretary's decision here and the effect of those alleged inconsistencies on the deference afforded that decision. We respectfully refer the Court to that discussion in Defendant's opening brief. Id. at 11-17.

2.      Plaintiff further contends that the Secretary's position is inconsistent with other aspects of his bad debt policy.  Pl.'s Reply at 12.  Plaintiff asserts that the Secretary's decision here "express[es] a policy that would deny all bad debt reimbursement if a provider is still continuing collection efforts, including placement at an outside agency."  Id. at 13.  Even if true, this would be unremarkable, since the Secretary's regulations require a provider to complete reasonable collection efforts before writing off a debt.  See 42 C.F.R. § 413.89(e).  But Plaintiff's description of the Secretary's decision is not accurate.  Here, as in every individual adjudication, the Secretary has merely reached a determination in a single case based on the facts at issue in that case.  His decision in this case was not an expression of any global policy regarding the reimbursability of claimed bad debts that have been referred to a collection agency.  Rather, it was merely a determination that under the facts of this case, where the hospital simultaneously referred the debts to a collection agency and declared them worthless for Medicare purposes, it had not complied with the regulatory requirements that a provider must complete reasonable collection efforts and exercise sound business judgment in claiming payment for bad debts.  It is conceivable, therefore, that had the facts been different, for example if the debt had remained at the collection agency for an extended period of time before Plaintiff claimed it as bad debt on its cost report, the Secretary's determination may also have been entirely different.  In this case, the Secretary simply found that a provider must have "completed its collection effort, including outside collection, before claiming debts as worthless."  Id. at 12.  This does not necessarily mean that "no bad debt reimbursement may ever be claimed while the debts remain at a collection agency," as Plaintiff contends.  Id. at 13.  The Secretary simply never concluded that.

11

Plaintiff also asserts that the 120-day "reasonable collection effort" policy in the PRM is inconsistent with the Secretary's decision in this case. Id. at 13-14. The PRM provides that debts may be deemed uncollectible if the provider first undertakes reasonable collection efforts for at least 120 days. PRM § 310.2; Pl.'s Mot., Ex. 1 at 3-6. However, nowhere does the PRM preclude the Secretary from determining that a debt cannot be claimed as uncollectible if a provider continues to make debt-collection efforts beyond 120 days. In this case, Plaintiff continued to make collection efforts beyond 120 days when it referred the debts to an outside agency, while simultaneously submitting the claims for reimbursement as if they were already uncollectible. The Secretary's decision here is perfectly in keeping with the policy in section 310.2. Plaintiff chose to continue its collection efforts; because the debts were referred to a collection agency after the 120-day period expired, they were no longer presumptively uncollectible under PRM § 310.2.

Additionally, Plaintiff contends that PRM § 316, which provides for an offset against current bad debts if the provider subsequently collects amounts previously written off as bad debts, clashes with the Secretary's decision here. Pl.'s Mot. at 14-15. This argument is without merit. Section 316 merely provides a fall-back mechanism to be used when a provider later receives payment on an outstanding debt already deemed uncollectible. To use this provision to show that any of the requirements for claiming bad debt are unreasonable would allow the provision to subsume every bad debt requirement, leaving providers free to argue in every instance that the bad debt policies are unenforceable because the Secretary can always offset the reimbursement later. The provision is clearly intended merely to provide recourse in the unusual case where, despite best efforts and application of the relevant policies, a debt that has been

written off is later collected. As the Secretary noted, section 316 does not represent an expectation that collection efforts will continue past the time a debt is declared worthless. A.R. at 8. To the contrary, as the Secretary found here in denying Plaintiff's claim, only when those efforts are completed can the debt be called worthless and, therefore, reimbursable. The possibility that debts deemed worthless might nevertheless later unexpectedly be recovered does not excuse Plaintiff from complying with the rules for claiming bad debts in the first place.

3.  Plaintiff argues that the "policy" prohibiting reimbursement of bad debts that remain at outside collection agencies was only initially announced in the <u>Battle Creek</u> case, which was adjudicated in 2004, and therefore cannot be applied "retroactively" in the instant case. <u>See</u> <u>Battle Creek</u>, 423 F. Supp. 2d at 761. This argument fails for several reasons. First, it is hard to see how the Secretary's making a decision in this case in 2007 that is consistent with the earlier <u>Battle Creek</u> decision issued in 2004 is in any way "retroactive," let alone impermissibly so. And again, the decisions in both this case and <u>Battle Creek</u> are straightforward applications of the Secretary's duly promulgated, longstanding bad debt rules. Those rules require not only that a debt must be related to covered services and derived from deductible and coinsurance amounts, but also that the provider must be able to establish that reasonable collection efforts were made, that <u>the debt must actually be uncollectible when claimed as worthless</u>, and, finally, that <u>sound business judgment must have established that there is no likelihood of recovery at any time in the future</u>. 42 C.F.R. § 413.89(e) (emphasis added); Pl.'s Mot. at 4. Similarly, the Secretary's

decisions in Lourdes[3/] and Methodist Hosp. of Dyersburg,[4/] both cited by Plaintiff (Pl.'s Reply at 15), as well as the case at hand and Battle Creek, are all just applications of this four-part regulatory test to the individual facts in each case.

There is certainly nothing impermissible about applying existing legal standards to the facts presented in an adjudication. Indeed, adjudication is a "form of administrative action where retroactivity is not only permissible but standard." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 221 (1988) (Scalia J., concurring); see also Motion Picture Ass'n of America, Inc. v. Oman, 969 F.2d 1154, 1155 (D.C. Cir. 1992) ("In adjudication, retroactivity is the norm."). Agency action is not made impermissibly retroactive merely because it draws upon antecedent facts for its operation. Regions Hosp. v. Shalala, 522 U.S. 448, 456 (1998); see also Legal Assistance for Vietnamese Asylum Seekers v. Dept. of State, 104 F.3d 1349, 1352 (D.C. Cir. 1998) (rule has impermissible retroactive effect only if it would impair rights that a party possessed when he acted, increases a party's liability for past conduct, or imposes new duties with respect to transactions already competed). Thus, utilizing adjudication to apply valid rules regarding bad debt reimbursement is not impermissibly retroactive simply because it represents a present determination regarding past facts. Here, the Secretary applied the same bad debt policy that existed at the time Plaintiff provided the care to Medicare beneficiaries for which it now seeks to obtain bad debt reimbursement. That the Secretary judged Plaintiff's past status against

---

[3/]    Lourdes Hospital v. Blue Cross and Blue Shield Ass'n, Oct. 27, 1995, CCH Medicare & Medicaid Guide, ¶ 43,723.

[4/]    Methodist Hosp. of Dyersburg v. Blue Cross and Blue Shield Ass'n, PRRB Hearing Dec. No. 2000-D56, 2000 WL 796345, May 30, 2000, CCH Medicare & Medicaid Guide, ¶ 80,502.

the bad debt reimbursement policy that existed then and exists now certainly does not render the Secretary's decision unlawfully retroactive.

Even applying Plaintiff's proffered five-point test for determining when an adjudication should not be allowed to apply retroactively, see Retail, Wholesale & Dep't Store Union v. N.L.R.B., 466 F.2d 380 (D.C. Cir. 1972); Pl.'s Reply at 16-17, does not aid Plaintiff here. First, this case is not one of first impression, since the Secretary has already applied his regulatory bad debt requirements in very similar circumstances in Battle Creek. Second, the adjudication discussed herein does not signal an abrupt change in a governing standard because the regulatory requirements and the decision in Battle Creek both preceded this adjudication. Third, Plaintiff could not reasonably have relied on a prior, inconsistent rule since the regulatory framework and the decision in Battle Creek made the completion of collection efforts and sound business judgment requirements clear. Fourth, the burden on Plaintiff under this decision is minimal. All that is required of Plaintiff is that it complete its collection efforts, either with or without referral to a collection agency, in order to claim the bad debts as uncollectible. Last, there is a strong interest in upholding the Secretary's decision, since to decline to do so would effectively eliminate two of the four regulatory bad debt requirements, as the court observed and refused to countenance in Battle Creek. See 423 F. Supp. 2d at 761.

4.    Finally, Plaintiff for the first time in its reply raises the argument that the decision in this case is totally flawed because it relied on a MIM provision that was not announced in the Federal Register, as required by statute. Pl.'s Reply at 17-19. As a general rule, arguments raised for the first time in a reply brief should not be considered. See Scott v. Office of Alexander, 522 F. Supp. 2d 262, 274 (D.D.C. 2007) (citations omitted). Plaintiff contends that it

raises this argument now for the first time because the case Chippewa Dialysis Services v. Leavitt, 511 F.3d 172 (D.C. Cir. 2007), was decided after Plaintiff filed its motion for summary judgment, but this fact does not excuse the requirement that such belated arguments not be entertained by the Court. Importantly, the Federal Register argument Plaintiff has now raised post-Chippewa could have been raised prior to the Chippewa decision; it is by no means novel. In any event, Plaintiff's argument is spurious. As noted above, the Secretary's decision is sustainable as an application of his bad debt regulations, without any regard to the 1989 MIM provision. See *supra* at 7-8. Thus, it is of no moment if the MIM provision was not lawfully promulgated.

Finally, the Secretary in fact complied with the statute by publishing a description of the 1989 MIM provision in the list of new manual sections as required. See Pl.'s Reply, Ex. 13. Plaintiff contends, however, that the descriptions therein were not detailed enough, and specifically that the title of the new rule was too vague. Id. at 18. The statute, however, does not require that the title of a publication contain particular elements or detail. 5 U.S.C. § 553. Moreover, the transmittal contains numerous changes to the manual, interpretive rules, statements of policy, and national coverage determinations spanning a three month period. Id., Ex. 13. It would be impractical at best to require that an agency break down every element of a transmittal and describe it separately and with particularity. Further, while Plaintiff asserts that the changes were listed as part of Prospective Payment System (PPS) audit adjustment and urges that bad debt is paid "outside" of PPS, Plaintiff in fact appears to be a PPS hospital. See A.R. at 20 (wherein the PRRB describes Plaintiff as an "acute care hospital," which is not one of the types of hospitals exempted from PPS under 42 U.S.C. § 1886(d)(1)(B)). Plaintiff does not

16

contend in its reply that it is not a PPS hospital. As a PPS hospital, therefore, Plaintiff was on notice of the published PPS audit instructions.

## CONCLUSION

For the foregoing reasons and for those adduced in the Secretary's opening brief, the Secretary respectfully requests that this Court grant his motion for summary judgment, deny Plaintiff's motion for summary judgment, and affirm the Administrator's decision dismissing Plaintiff's administrative appeal.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR
United States Attorney
D. C. Bar No. 498610


/s/
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
N.Y. Reg. No. 4202982
United States Attorney's Office
Civil Division
Judiciary Center Building
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

                                        /s/  
                                        LINDA KEYSER  
Attorney  
U.S. Department of Health and Human Services  
Office of the General Counsel  
Centers for Medicare & Medicaid Services Division  
Room 5327D, Cohen Building  
330 Independence Avenue, S.W.  
Washington, D.C. 20201  
202-205-8779  
Facsimile: (202) 401-1405  

Counsel for Defendant

OF COUNSEL:

JAMES C. STANSEL  
Acting General Counsel

JANICE HOFFMAN  
Associate General Counsel

MARK D. POLSTON  
Deputy Associate General  
    Counsel for Litigation

United States Department of  
    Health and Human Services

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on May 2, 2008, an electronic copy of the foregoing Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment will be served on Plaintiff's counsel via the United States District Court's Electronic Case Filing system.

                                    Respectfully submitted,

                                    /s/
                                CHRISTOPHER B. HARWOOD
                                Assistant United States Attorney
                                N.Y. Reg. No. 4202982
                                United States Attorney's Office
                                Civil Division
                                Judiciary Center Building
                                555 4th Street, N.W.
                                Washington, D.C. 20530
                                (202) 307-0372

                                Counsel for Defendant